UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CORRIE HORAN, INDIVIDUALLY AND<br>AS PARENT OF O.D., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:24-cv-794-JPH-TAB |
| | ) | |
| THE BOARD OF SCHOOL COMMISSIONERS | ) | |
| FOR THE CITY OF INDIANAPOLIS dba | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) | |
| SUPERINTENDENT ALEESIA JOHNSON, | ) | |
| INDIVIDUALLY AND IN HER OFFICIAL | ) | |
| CAPACITY, PRINCIPAL, MARY KAPCOE, | ) | |
| INDIVIDUALLY AND IN HER OFFICIAL | ) | |
| CAPACITY, VICE PRINCIPAL, FINAE RENT, | ) | |
| INDIVIDUALLY AND IN HER OFFICIAL | ) | |
| CAPACITY, TEACHER, JULIOUS JOHNICAN, | ) | |
| INDIVIDUALLY AND IN HIS OFFICIAL | ) | |
| CAPCITY, SUBSTIUTE TEACHER, PARDEEP | ) | |
| DAHLIWAL, INDIVIDUALLY AND IN HER | ) | |
| OFFICIAL CAPACITY, ANTHONY BIGBY, | ) | |
| IPS BEHAVIORAL, INDIVIDUALLY AND IN | ) | |
| HIS OFFICIAL CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANT JOHNICAN'S MOTION
FOR PROTECTIVE ORDER**

Corrie Horan, individually and as parent of O.D., a minor ("Plaintiff"), by counsel,

respectfully responds and objects to Defendant, Julious Johnican's, "Motion for Protective

Order" – which is in essence a motion for a gag order. In response and in support of the

objection, Plaintiff states:

**Introduction**

On June 25, 2024, an article was published by news outlet WFYI Indianapolis titled: "No one told state education officials about alleged abuse by an IPS teacher. And no law requires it."[1] On the same day that the article was published, Plaintiff's counsel, Tammy Meyer, shared the article, as she does many others, on the Metzger Rosta's Facebook page, with a brief statement containing commentary on the article which focused on teaching licenses in the State of Indiana and failures in the educational system with reporting of substantiated child abuse claims, including Julious Johnican's, to the Indiana Department of Education.[2]  Meyer's post on the Metzger Rosta Facebook page is attached as *Exhibit A*.

On June 27, 2024, civil counsel for Defendant Julious Johnican, Caren Pollack, emailed Meyer requesting her to remove the post, and Meyer declined to do so as the post was not a violation of the Indiana Rules of Professional Conduct. Counsel Pollack did not email or copy attorney Catherine Michael (nor did she contact Michael, her staff, or Connell Michael, LLP with any request to remove or change any online posting by Michael). [Dkt. 42, Ex.B] Contrary to Pollack's statement in the Motion for Protective Order,  Michael has not altered or removed any online posting. There was no further contact from Pollack via email or telephone call with Meyer on this issue and at no time had Pollack contacted Michael about similar posts.

On July 1, 2024, Defendant Johnican's counsel filed a Motion for an emergency pre-trial conference but failed to state the "emergency" or why a conference was needed. Defendant's counsel did not communicate with Michael or Meyer regarding the reason for the request for an

---

[1] The article can be accessed at the following link: No one told state education officials about alleged abuse by an IPS teacher. And no law requires it (wfyi.org)

[2] In the motion, Defendant Johnican's counsel incorrectly states that Catherine Michael, Meyer's co-counsel, immediately removed a similar post she had made regarding this matter after being contacted by Pollack. That is not accurate. Michael has not been contacted by Pollack. Michael did make a similar post, sharing and commenting on the same WFYI article. That post remained and Michael has not, and was not, contacted about it by Defendant's counsel.

emergency pre-trial conference. The pre-trial was held on July 18, 2024, at Defendant Johnican's counsel's request wherein she orally requested a gag order seeking to have Plaintiff's counsel ordered not to discuss this civil case in the media or any other forum.  At the pre-trial conference Pollack was instructed that if she wished to pursue the matter further, she could file a Protective Order, as the Court stated that it was not taking any action on the matter based on the pre-trial conference.  Two weeks later, again without any additional communication to Meyer or Michael of any type, Defendant Johnican filed a Motion for Protective Order seeking to gag Plaintiff's counsel from making any comment to the media concerning this case against a public entity in the State of Indiana and its staff members. [Dkt. 42]

Defendant's motion seeks an extraordinary remedy that would impose an unjustified restriction on Plaintiff's counsels' constitutionally protected right to free speech on matters of significant public concern, specifically the accountability and safety practices within the public school system and a public matter involving a civil case against a school system.

Defendant has not met the rigorous standards required to justify such a restriction. First, the statements by Plaintiff's counsel, which are at the core of Defendant's motion, do not violate Indiana Rule of Professional Conduct 3.6, as they neither disclose confidential information nor present any material risk of prejudicing the judicial process. Instead, these statements reflect permissible and necessary commentary on the broader issues of public safety and institutional accountability, both of which are subjects of legitimate concern to the community.

Second, Defendant has failed to demonstrate any substantial likelihood that the statements in question have influenced or will influence the impartiality of the jury pool or otherwise impede the administration of justice. Defendant's claims are speculative and unsupported by evidence. Furthermore, the timing of Defendant's motion, filed more than a month after the statements were made and nearly two weeks following an "emergency" hearing on the issue, raises questions about the true intent behind this request. The lack of immediacy in Defendant's actions suggests that the

motion is an attempt to suppress legitimate criticism and gain a strategic advantage rather than a genuine effort to protect the fairness of the proceedings.

**I.      Defendant Johnican's Motion for Protective Order Should Be Denied Because The Motion Requests This Court To Infringe On Counsels' First Amendment Rights Of Freedom Of Speech On Matters Of Public Concern.**

The First Amendment strongly protects the right to free speech, particularly on matters of public concern. The statements by Plaintiff's counsel Meyer about the failures of IPS and the broader implications for school safety and accountability clearly fall within this category. The U.S. Supreme Court has recognized that attorneys, like other citizens, are permitted to express their views publicly unless their speech poses a serious threat to the fairness of a trial, which has not been demonstrated here.

A trial court can only limit a party's and their attorney's exercise of their First Amendment right of freedom of speech where the record contains sufficient specific findings that the party's and their attorney's conduct poses a "serious and imminent threat to the administration of justice." *Davis v. Carmel Clay Schs.*, No. 1:11-cv-00771, 2012 U.S. Dist. LEXIS 50172 at *2-3 (Apr. 9, 2012) *quoting Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970). A party moving to gag attorneys from making statements about the case must show something more than a "mere remote possibility" that they will suffer from juror partiality. *Mendez v. City of Chi.*, No. 18 CV 5560, 2019 U.S. Dist. LEXIS 202105 at *10 (N.D. Ill. Nov. 21, 2019) (denying defendants request to bar public comment by plaintiffs and their attorney where the attorney had made public extrajudicial statements including recitations of the facts alleged in the plaintiffs' complaint, "applicable Fourth Amendment law," and investigatory findings regarding alleged police practices relating to excessive force against young children).

"A blanket prohibition...against all comment in a case whether tried before a judge or jury without regard to whether such comment is or even could be prejudicial to the fair administration of justice cannot stand without making a mockery of the free speech guarantee of the first

amendment." *In re Oliver*, 452 F.2d 111, 114 (7th Cir. 1971). An order prohibiting speech must be narrowly drawn so that it does not prohibit speech which will not have an effect on the fair administration of justice. *Chase*. 435 F.2d at 1061.

The statements cited by Defendant were neither misleading nor false; instead, they represent permissible commentary on issues of significant public concern. In particular, these statements address the accountability of individuals and institutions responsible for the safety and well-being of students, a matter that directly impacts the public's interest in maintaining a safe and effective educational environment. Criticism of public officials and entities, especially in their professional capacities, is a well-established aspect of free speech protected by the First Amendment. The expression of dissatisfaction or concern over the conduct of public school officials and employees falls squarely within this realm, as it pertains to the public's right to be informed about matters that could affect their children and community.

A protective order preventing attorneys from making *any* public statements regarding a case is impermissibly broad under the Seventh Circuit's "serious and imminent threat" standard: in such cases, courts have found that Professional Rule of Conduct 3.6 is sufficient to govern the conduct of counsel. *Davis*, LEXIS 50172 at *2; *see also, Bianchi v. Tonigan*, No. 12 C 0364, 2012 U.S. Dist. LEXIS 168590 at *17 (N.D. Ill. Nov. 28, 2012).

Judicial restraints on extrajudicial comments of lawyers about a pending proceeding must be evaluated in the context of the First Amendment jurisprudence. *Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970). The Indiana Supreme Court's comments to Indiana Professional Rule of Conduct 3.6 acknowledge the importance of balancing the right to a fair trial with the right of free expression when it comes to trial publicity. Ind. Rule of Professional Conduct 3.6, Comment [1].

> [T]here are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.

*Id.*

The United States Constitution protects rights of free speech under the First Amendment, and the most rigorously protected speech is that which is on matters of public concern. *Snyder v. Phelps*, 562 U.S. 443, 451-452. "[S]peech on matters of public concern . . . is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749, 758-759. The First Amendment establishes "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 270. That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison* v. *Louisiana*, 379 U.S. 64, 74-75. Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick* v. *Myers*, 461 U.S. 138, 145. **This protection is of no less significance when the speaker on public issues is an attorney participating in an ongoing civil matter concerning the abuse of a special needs child while at school**. *United States v. Schock*, No. 16-cr-30061, 2016 U.S. Dist. LEXIS 171016 at *4 (C.D. Ill. Dec. 9, 2016) *citing Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 253-254 (7th Cir. 1975) (noting that attorneys are often in the position to act as a check on government by exposing abuses).

There are fewer matters of greater public concern than failures in the school system that cause harm to children, including the most vulnerable with special needs. Schools are charged with an immense undertaking which is critical in developing future generations. Millions of Indiana parents send their children to school every day trusting that the schools and the larger education system will teach and care for their children, and not subject them to harm. When this trust is violated, the shortcomings in the systems designed to protect children in our state must be exposed through public discourse. To silence speech on such a grave topic would be to forget the very purpose of First Amendment rights to freedom of speech.

**II.     Defendant Johnican's Motion For Protective Order Should Be Denied Because The Request Is Impermissibly Broad, And Rule Of Professional Conduct 3.6 Is Sufficient To Govern Counsels' Speech In This Matter.**

In this case, an order preventing counsel from "discussing this matter on social media or sharing their thoughts regarding the matter with the media" as requested in Defendant Johnican's Motion would be impermissibly overbroad. Under such a gag order, any statement counsel would be otherwise permitted to make under Rule of Professional Conduct 3.6 would be prohibited even though it would not pose a serious and imminent threat to the administration of justice. Defendant's motion rather appears to be a calculated attempt to stifle Plaintiff's counsel's criticism of all Defendants and to gain a tactical advantage by silencing public discourse regarding the issues presented within this case. The timing of Defendant's motion and the vague assertions of harm indicate an effort to limit the Plaintiff's ability to advocate for her child's rights publicly through general criticism of the educational system as a whole. Such efforts should not be rewarded with the extraordinary remedy of a gag order.

Plaintiff's counsel have been vigilant in upholding Rule 3.6 in all media statements and social media posts to date in this matter, and they will continue to do so. Defendant's motion asserts that Meyer violated Rule 3.6 when she made the Facebook post at issue. However, Defendant does not illuminate how the post violated Rule 3.6, only stating that the post was "inflammatory." Rule 3.6 nor any of its comments prohibit a statement that is merely "inflammatory." And, it is certainly open for debate as to whether a comment is inflammatory.

In his motion, Defendant cites *United States v. Calabrese*, No. 02 CR 1050, 2007 U.S. Dist. LEXIS 51128 at *6 (N.D. Ill. July 13, 2007) where the court entered an order restricting extrajudicial statements by trial participants. However, the facts surrounding that case before the Illinois District Court were vastly different from the present case. *Calabrese* was a high-profile criminal case involving charges against multiple defendants for murder, racketeering, and conspiracy. *Id.* at *1-2. The court stated that its decision was in part based on inappropriate actions

which had already taken place such as the disclosure to media of sensitive information from sealed records in the case. *Id*. at *4-5. Further, the court was concerned with public circulation of "evidence which might never be admitted at trial and ex parte statements by counsel giving their version of the facts." *Id*. at *7.

The concerns of the *Calabrese* court have no merit in the present case. The social media post at issue in this case states a general opinion based on publicly available information that Defendants in this civil matter "failed" O.D. This is not a legal conclusion, nor is it a statement of counsel's own "version of the facts." The post does not reveal any information about the criminal or civil matter that is not widely available to the public. Meyer's statements in the post are an expression of concern about general public policy issues relating to teaching licenses and schools taking accountability for what happens in their classrooms. These are general public policy issues that are peripheral to the present case. Meyer's statements in the post are targeted at the larger education "system," rather than at Defendant Johnican individually. Defendant Johnican's name was included in a list with IPS, School 87, DCS, and the Indiana Department of Education to show that the issues run much deeper than the acts of one individual.

### III.     Defendant's Motion Fails to Meet the Standard for a Protective Order

Defendant Julious Johnican's motion represents an improper attempt to restrict Plaintiff and her counsel's fundamental First Amendment rights to free speech. In the Seventh Circuit, to justify the issuance of a protective order that would limit extrajudicial statements, there must be a compelling and demonstrable need to prevent a "serious and imminent threat" to the administration of justice. *Davis*, LEXIS 50172 at *2 *citing Chase*, 435 F.2d at 1061. "Vague allegations" and a showing of a "mere remote possibility" that juror impartiality could result are not enough to justify a protective order barring public comments by counsel. *Mendez*, LEXIS 202105 at *10.

The possibility that potential jurors could come across extrajudicial statements by counsel is also not enough to show a serious and imminent threat because parties have the opportunity to

secure an impartial jury through the robust *voir dire* process. *Dillinger v. Brandt*, No. 1:20-cv-2257-JMS-DLP, 2020 U.S. Dist. LEXIS 172989 at *8 (S.D. Ind. Sep. 22, 2020). Rather, to justify the type of protective order that Defendant Johnican seeks, the Defendant must show that the reach of counsel's statements is so extensive that the Court and the parties will be unable to secure an impartial jury using the ordinary procedures for screening potential jurors. *Id*. at * 9.

Such a remedy is exceptional and should be reserved for instances where there is a clear, present, and substantial risk that the fairness of the proceedings could be compromised. In this case, Defendant has failed to meet this high bar. There is no evidence to support the contention that any statements made by Plaintiff's counsel present such a threat in either the criminal or civil proceedings.

Defendant Johnican's motion is based on conjecture and speculation rather than concrete facts. The social media statements by Plaintiff's counsel, which are the crux of Defendant's concerns, are merely expressions of opinion on the broader issue of accountability within the educational system, particularly concerning the well-being of students such as O.D., the minor child involved in this case. These statements do not touch upon specific evidentiary details, confidential information, or any matter that could prejudice the facts in dispute or improperly influence the impartiality of potential jurors. The statements are general in nature, reflecting the legitimate concerns of a public advocate about the accountability of public institutions and do not constitute a direct or indirect commentary on the specifics of the litigation.

Further, Defendant Johnican has not provided any evidence that the statements by Plaintiff's counsel pose a "serious and imminent threat" to the judicial process in either the criminal or civil contexts. There is no indication that the public commentary has reached potential jurors. As of August 30, 2024, the Facebook post at issue has received only three "likes" and one "share," making it very unlikely that any potential jurors have or will view this post. And even if potential

jurors do see this post, any possible prejudicial impact will be addressed through a robust *voir dire* process.

Additionally, no evidence has been presented that such statements would materially affect the outcome of the proceedings, which are entirely different than issues before the Indiana Department of Education on teacher licensing.  The mere possibility that jurors could, in theory, be exposed to these statements is insufficient to meet the "serious and imminent threat" threshold established by precedent. Courts have consistently held that speculative concerns or hypothetical scenarios do not justify the extraordinary step of issuing a gag order or other forms of prior restraint on speech.

The timing of Defendant Johnican's motion further undermines its credibility and suggests a lack of genuine concern over any purported threat to justice.  As previously addressed in this response, the motion was filed more than a month after the Facebook post by Plaintiff's counsel and nearly two weeks following an "emergency" hearing on the issue, raising serious doubts about the urgency or seriousness of Defendant's claims. If Defendant truly believed that the statements posed an imminent danger to the integrity of the proceedings, a prompt response would have been expected. The delayed filing, coupled with the vague and unsubstantiated assertions in the motion, lack of any contact outside of a single email to counsel, suggests that the request for a protective order is more of a strategic maneuver designed to silence Plaintiff's counsel and restrict their ability to advocate publicly for their client, rather than a legitimate effort to safeguard the fairness of the trial.

Protective orders that impose restrictions on speech are not to be granted lightly; they must be based on a real, not imagined, threat to the judicial process. Defendant has not shown that Plaintiff's counsel's public statements have caused any actual prejudice, nor that they will likely cause prejudice in the future. The absence of evidence showing a tangible impact on the proceedings or the jury pool further confirms that the perceived risk is, at most, theoretical.

Additionally, Defendant's reliance on broad and unsupported claims of potential prejudice falls short of the required standard for imposing such a drastic measure. The statements cited by Defendant do not reveal any privileged information, are not so pervasive that they are likely to reach potential jurors, do not contain inflammatory rhetoric that violates Rule of Professional Conduct 3.6, and do not constitute an extrajudicial attempt to sway the outcome of the trial. Instead, they reflect a lawyer's legitimate right to comment on issues of public concern, particularly when those issues pertain to the safety and welfare of children—a matter of significant public interest.

In light of these considerations, Defendant's motion lacks both the factual basis and the legal justification required for the issuance of a protective order. The motion is overly broad, seeks to impose a blanket restriction on speech without demonstrating the necessary and compelling reasons for doing so, and ultimately attempts to suppress protected speech rather than address any genuine concern for the administration of justice. Accordingly, Plaintiff respectfully requests that the Court deny Defendant Johnican's Motion for Protective Order in its entirety.

WHEREFORE, the Plaintiff, Corrie Horan, individually and as parent of O.D., a minor, by counsel, respectfully requests the Court deny Defendant Johnican's Motion for Protective Order.

*/s/ Tammy J. Meyer*
Tammy J. Meyer, #14612-49
Metzger Rosta LLP
32 S. 9th Street
Noblesville, IN 46060
tammy@metzgerrosta.com
Phone: (317) 219-4606
Fax: (317) 773-5077

*/s/ Catherine M. Michael*
Catherine M. Michael, #22474-49
Connell Michael, LLP
550 Congressional Blvd., Suite 350-11
Carmel, IN 46032
Phone: (317) 696-4159
catherine@connellmichaellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of September 2024, a true and exact copy of the foregoing was electronically filed. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

Catherine M. Michael
Connell Michael, LLP
550 Congressional Blvd., Suite 350-11
Carmel, IN 46032
catherine@connellmichaellaw.com
*Attorney for Plaintiff*

Caren L. Pollack
Pollack Law PC
10333 N. Meridian Street, Suite 111
Carmel, IN 46290
cpollack@pollacklawpc.com
*Attorney for Julious Johnican*

Amy Fox
Church Church Hittle + Antrim
203 W. Wayne Street, Suite 402
Fort Wayne, IN 46802
afox@cchalaw.com
*Attorney for Defendants*

Liberty Roberts
Hannah Gahimer
Church Church Hittle + Antrim
10765 Lantern Road, Suite 201
Fishers, IN 46038
lroberts@cchalaw.com
hgahimer@cchalaw.com
*Attorneys for Defendants*

_____
Tammy J. Meyer, #14612-49
*Attorney for Plaintiff*

METZGER ROSTA LLP
32 S. 9th Street
Noblesville, IN  46060
(317) 219-4606